UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALISA SUMLIN et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>MT. MORRIS TOWNSHIP et al.,<br><br>       Defendants. | Case No. 21-cv-10597<br>Honorable Shalina D. Kumar<br>Magistrate Judge Curtis Ivy, Jr. |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 46)**

**I. INTRODUCTION**

Plaintiffs Alisa Sumlin[1] and Lamar Cordell sued the township of Mt. Morris and police officers Laurie Salem and John Doe for violations of their Fourth and Fifth Amendment rights under 42 U.S.C. § 1983, as well as trespass, false arrest and/or false imprisonment, invasion of privacy, and gross negligence under state law in connection with the execution of a search warrant at Sumlin's Mt. Morris residence. ECF No. 9. Defendants filed a motion for summary judgment on all claims. ECF No. 46. The motion was fully briefed and the Court heard oral argument at a hearing held on

---

[1] Sumlin sues on her own behalf, as well as Next Friend for her minor daughter, C.B. ECF Nos. 9, 13.

February 14, 2023. ECF Nos. 49, 51, 54. This matter is now ripe for decision.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Sumlin, along with her two minor daughters and Cordell, lived at 6047 Penwood Road in Mt. Morris, Michigan (Penwood premises). According to plaintiff, police officers, dressed in street clothes and with guns drawn, forcibly entered her home at about 6:30 a.m. on October 8, 2020. ECF No. 9, PageID.63. Prior to entering the home, the officers handcuffed Cordell and placed him in a car as he arrived home from work. *Id*. Upon entering the home, the officers handcuffed Sumlin, who was dressed only in her underwear, and took her outside where she remained for approximately forty-five minutes. *Id*. at PageID.64. Sumlin's nine-year old daughter hid in her bedroom after she witnessed the officers handcuffing her mother and taking her to stand outside in her underwear. *Id*. Sumlin alleges that after forty-five minutes, Salem removed her handcuffs and explained that "they got the wrong house." *Id*. Notwithstanding this admission, Sumlin alleges that the police officers continued to search her home and her and Cordell's vehicles and seized their mobile phones. *Id*. at PageID.64-65.

Plaintiffs allege that their handcuffed detention and the seizure of their property during the search of the Penwood premises violated their

Fourth Amendment rights because the warrant authorizing the search was invalid and unconstitutional on its face. *Id.* at PageID.66-71. They also allege that the police officers' conduct amounted to a taking under the Fifth Amendment, trespass, false arrest and/or false imprisonment, invasion of privacy, and gross negligence. *Id.* at PageID.71-75. Defendants move for summary judgment, arguing that there were no constitutional violations because the search and seizure was conducted according to a valid warrant and the plaintiffs were lawfully detained during the execution of the search warrant. They also argue that plaintiffs' state law claims fail as a matter of law. Salem argues she is also entitled to qualified immunity and Mt. Morris contends that plaintiffs have failed to establish a viable claim against it under *Monell*. ECF No. 46.

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate where the evidence in the record, viewed in its entirety, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Additionally, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party, who must come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must designate specific facts in affidavits, depositions, or other factual material

showing "evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Id*. at 248, 251.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

### B. Fourth Amendment Claims

The Fourth Amendment, which applies to the states through incorporation by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "seizure" of an individual takes place when "by means of physical force or a

show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

### 1. Detention of Sumlin

"[A] warrant to search for contraband that is founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). The validity of a detention relative to the execution of a search warrant requires evaluating the extent of the intrusion against its justification. *Id*. at 700-01. The justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant include preventing any frantic efforts to conceal or destroy evidence or to flee, "minimizing the risk of harm to the officers" if the execution of a warrant may give rise to sudden violence, and facilitating "the orderly completion of the search." *Id*. at 702-05.

Officers executing a search warrant may use reasonable force, including handcuffing occupants of the premises being searched. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005); *see also Thornton v. Fray*, 429 F. App'x 504, 508 (6th Cir. 2011). But the Fourth Amendment requires that the cuffs "be removed, if at any point during the search, it would be readily apparent to an objectively reasonable officer that removing the handcuffs

would not compromise the officers' safety or risk interference or substantial delay in the execution of the search." *Muehler*, 544 U.S. at 103 (Kennedy, J., concurring); *see also Bletz v. Gribble,* 641 F.3d 743, 755 (6th Cir. 2011) (a reasonable jury could conclude that defendants violated detainee's Fourth Amendment rights when they failed to adequately explain why it was necessary to keep her handcuffed and locked in the back of a police car when there was no evidence she presented a continued safety risk); *Binay v. Bettendorf*, 601 F.3d 640, 652 (6th Cir. 2010) (continued use of weapons and handcuffs once premises is clear of contraband creates a question of fact sufficient to defeat qualified immunity for a Fourth Amendment violation).

In addition, the Supreme Court recognizes that "'special circumstances, or possibly a prolonged detention,' might render a detention incident to a search unreasonable." *Los Angeles Cty. v. Rettele*, 550 U.S. 609, 615 (2007) (quoting *Summers*, 452 U.S. at 705, n.21). Specifically relevant here, courts have found that forcing detainees to remain unclothed and exposed for longer than necessary to achieve a legitimate law enforcement purpose may cause an otherwise valid detention related to a search warrant to violate the Fourth Amendment. *See Thornton*, 429 F. App'x at 510; *Hall v. Shipley*, 932 F.2d 1147, 1153-54 (6th Cir. 1991); *see*

*also Spencer v. District of Columbia*, 168 F. Supp. 3d 114, 120-21 (D.D.C. 2016) (collecting cases). Indeed, *Rettele* is clear on this point: officers are not free to prevent exposed, unclothed occupants "from dressing any longer than necessary to protect their safety." *Id*.; *see also Quick v. Hall*, 2020 WL 1164773, at *10-11 (S.D. Ohio March 11, 2020).

If Sumlin, handcuffed and in her underwear, remained that way longer than was necessary to protect officer safety during the execution of the search warrant, which is a question of fact for the jury, then the detaining officers violated her clearly established Fourth Amendment rights. *See Thornton*, 429 F. App'x at 510.

Plaintiffs do not name the detaining officers as defendants in this action. Salem, the only individual defendant named by plaintiffs,[2] testified

---

[2] Plaintiffs named Police Officer John Doe as a defendant in their complaint but did not direct any specific allegations against him. ECF No. 9. Discovery is now closed, and plaintiffs have not identified the John Doe defendant. The use of unnamed defendants is disfavored in federal courts and designating a person by way of a fictitious title does not make that person a party or prevent the entry of a final judgment. *Mosholder v. Lowe's Home Centers, LLC*, 444 F. Supp. 3d 823, 832 (N.D. Ohio 2020). Plaintiffs have had adequate opportunity to identify the John Doe defendant and have failed to do so. Indeed, plaintiffs must substitute named defendants for unknown defendants after the completion of discovery. *Strunk v. Liberty Ins. Corp.*, 2019 WL 2178620, at *2 (E.D. Ky. 2019) (citing *Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011)). Discovery here was complete in June 2022. Accordingly, the Court dismisses the unnamed defendant without prejudice. *See Mosholder*, 444 F. Supp. 3d at 832. After the hearing on defendant's motion, plaintiffs filed

that she was not involved with the tactical team who enters, clears, and secures the premises before executing a search warrant. ECF No. 46-3, PageID.361-63. Salem testified she waited down the street from the premises and only entered after the task force had secured it. *Id*. at 362-63. She further testified that she did not handcuff Sumlin. *Id*. at PageID.364.

For Sumlin's claim against Salem to survive summary judgment, she must point to sufficient record evidence to create a disputed issue of material fact as to whether Salem was personally involved in the conduct that violated Sumlin's constitutional rights. *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019) (quoting *Binay*, 601 F.3d at 651) (marks omitted); *see also Thornton*, 429 F. App'x at 510. "Each defendant's liability must be assessed individually based on his own actions." *Binay*, 601 F.3d at 650. "As a general rule, mere presence at the scene of a constitutional violation, without a showing of direct responsibility for the action, will not subject an officer to liability." *Fazica*, 926 F.3d at 289 (quoting *Ghandi v. Police Dep't of Detroit,* 747 F.2d 338, 352 (6th Cir. 1984)) (marks omitted).

---

a motion for leave to amend to name a new party. ECF No. 55. In a separate order, the Court denied that motion based on plaintiffs' undue delay in naming a new party and undue prejudice to defendants if amendment were permitted. ECF No. 60.

Plaintiffs argue that Salem was the "officer in charge" of the tactical team charged with entering and securing the premises for the execution of the search warrant, and, as such, is subject to liability for the team's violative conduct. First, plaintiffs cite no evidence to support their contention that Salem was the "officer in charge." To the contrary, Salem testified that she was not a part of the tactical team who initiated the execution of the search warrant and did not participate in the briefing to establish a plan prior to executing the search warrant. ECF No. 46-3, PageID.361-63.

Second, even if Salem held a supervisory role in the execution of the search warrant, "a supervisory official's failure to supervise…is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it…" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation and marks omitted). A plaintiff must show that a supervising officer "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (internal quotation and marks omitted). Plaintiffs offer no evidence that Salem authorized, approved, or acquiesced in Sumlin's handcuffing.

Because Salem was not personally involved and did not authorize, encourage, or approve of the conduct violating Sumlin's rights, she is entitled to summary judgment on plaintiffs' Fourth Amendment claims for unlawful detention. *See Thornton*, 429 F. App'x at 510; *see also Peatross*, 818 F.3d at 242.

### 2. Seizure of Mobile Phones

Plaintiffs argue that the seizure of their mobile phones violated their Fourth Amendment rights because the search warrant under which the telephones were seized was unconstitutional on its face. Plaintiffs maintain that the search warrant was deficient because it did not include particularized facts to justify the seizure of each listed item of property commonly found in a home, including mobile phones. Salem argues that she is protected by qualified immunity and thus entitled to summary judgment on plaintiffs' claims related to their iPhones.

Qualified immunity protects officers executing a search warrant "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bullock v. City of Detroit*, 814 F. App'x 945, 949 (6th Cir. 2020) (citing *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). That a neutral magistrate issued a search warrant provides the best evidence that officers would not have

reasonably known that a warrant lacked probable cause. *Id*. (citing *Messerschmidt v. Millender*, 565 U.S. 535, 546-47 (2012)). To defeat a qualified immunity defense in this setting, a plaintiff must show that "'it is obvious that no reasonably competent officer would have concluded that a warrant'" is valid. *Id* (quoting *Messerschmidt*, 565 U.S. at 546-547).

The degree of specificity required for a valid search warrant is flexible and varies depending on the crime involved and the type of property sought; a description of property is valid if it is as specific as the circumstances and the nature of the investigation permits. *Wheeler v. City of Lansing*, 660 F.3d 931, 941 (6th Cir. 2011). To satisfy the particularity requirement, a warrant-seeking officer must provide "additional details, *if they are available*, to help distinguish between contraband and legally possessed property." *Id*. at 942 (emphasis added).

In *Wheeler*, the court held that the officer executing the search warrant for stolen property in Wheeler's apartment could not rely upon the facial validity of the search warrant, even though it was issued by a magistrate upon the application of the prosecutor, because that officer "played a major role in preparing the affidavit and procuring the warrant." *Wheeler*, 660 F.3d at 941. The executing officer provided the information that he "knew would form the basis of the warrant affidavit . . . the

search warrant . . . , but he failed to supply additional known details about the items to be seized that [he] could have included in the warrant" and which would distinguish stolen items from property belonging to the plaintiff. *Id*. Under these facts, the court denied qualified immunity because "it would be apparent to a reasonable officer that listing general categories of items to be seized *even though further details are available* violates the Fourth Amendment's specificity requirement." *Id*. (emphasis added).

Unlike in *Wheeler*, the search warrant here was not directed at uncovering stolen property such that the executing officers needed particularized facts to distinguish between contraband items and legally possessed property. Instead, this search warrant focused on common and legally possessed electronic devices (iPhones, iPads, cameras, etc.,) because they were believed, with probable cause, to contain evidence of the crimes enumerated in the warrant. Also distinct from *Wheeler*, plaintiffs in this matter do not allege or cite evidence to show that Salem played a major role in preparing the affidavit and procuring the warrant or that she provided information that she knew would form the basis of the warrant affidavit. Nor is there any evidence that additional details about the property subject to seizure under the search warrant were known but not disclosed to the affiant or the issuing magistrate.

Nothing in the record before the Court would make Salem's reliance on the search warrant issued by a neutral magistrate for the Penwood premises unreasonable. Thus, even if the search warrant were constitutionally deficient, Salem is entitled to qualified immunity for her role in executing it.[3]

Plaintiffs also argue that the seizure of their phones violated their constitutional rights because, under *Riley v. California*, defendants required a second warrant, based on particularized facts for probable cause, to authorize the downloading of data from their cell phones. 573 U.S. 373 (2014). Plaintiffs misunderstand *Riley*. *Riley* requires a separate search warrant to examine the digital data on a smartphone when the phone itself

---

[3] Plaintiffs suggest that Salem's alleged comment to Sumlin that "they got the wrong house" should defeat defendants' motion for summary judgment. But plaintiffs do not factually or legally develop this argument in a meaningful way. Plaintiffs do not specify how Sumlin's house was the wrong one: did the search warrant identify the wrong house, was it executed at a location other than the one identified in the warrant, or did it simply not yield the evidence the investigators expected to find? Moreover, they leave the Court to guess at the ramifications of searching the "wrong house." Does it invalidate the search warrant *per se* or automatically preclude qualified immunity? Plaintiffs' allusion to the "wrong house" issue in this "perfunctory manner, unaccompanied by some effort at developed argumentation" is deemed a waiver of that argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)) (citation omitted).

is seized as part of a warrantless search incident to an arrest. *Id*. at 401. But the examination of digital data from a smartphone seized pursuant to a search warrant is proper under that warrant provided it does not exceed the probable cause articulated in the original search warrant. *United States v. Castro*, 881 F.3d 961, 967 (6th Cir. 2018).

The search warrant at issue here specifically encompasses probable cause for smartphone digital data. ECF No. 47. The warrant attests that there is

> probable cause to believe that evidence of criminal conduct, to wit: . . . cellphones, smartphones, IPhones (sic) . . . , and the contents therein of each of these items, including but not limited to: subscriber information, photos, videos, music, text messages, Instagram messages, Facebook messages, contact numbers, call history, and any other evidence including the unlocking of said devices by any means necessary . . . will be found at the [Penwood premises].

*Id*. at PageID.453. The examination of the digital data from plaintiffs' seized iPhones did not exceed the scope of the executed search warrant and thus did not violate plaintiffs' Fourth Amendment rights.

In sum, summary judgment in favor of defendants is appropriate on plaintiffs' Fourth Amendment claims relating to the search and seizure of their iPhones.

### 3. Mt. Morris Township (*Monell* claim)

Plaintiffs assert that the Township bears responsibility for the violations of their Fourth Amendment rights. To establish municipal liability under *Monell*, "a plaintiff must prove: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations." *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019) (internal quotation and marks omitted).

Plaintiffs argue that Salem's unconstitutional conduct is attributable to the Township under *Pembaur v. Cincinnati*, 475 U.S. 469 (1986). Under *Pembaur*, municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. 475 U.S. at 480. But "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 481. The fact that a municipal official "has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on the exercise of that discretion." *Id*. at 481-82. In the case at bar, plaintiffs do not cite to any evidence, and nothing in the Court's review of the record before it suggests that Salem, a detective, would possess final policymaking authority for detention-incident-to-search-

warrant protocol within the Mt. Morris Police Department. Nor could Salem's discretion in executing the search warrant give rise to municipal liability. *See id*. Consequently, plaintiffs offer no basis for their Fourth Amendment claims against the Township.

### C. Fifth Amendment Claim

Plaintiffs also allege that the seizure of their mobile phones (which apparently were never returned to them) violated the Takings Clause of the Fifth Amendment. This claim is not viable.

"[I]t is well settled that a state's seizing and retaining property as part of a criminal investigation is not a 'taking' for a 'public purpose' under the Fifth Amendment, and thus does not give rise to a claim for just compensation." *Ostipow v. Federspiel*, 824 F. App'x 336, 341–42 (6th Cir. 2020) (citing *Bennis v. Michigan*, 516 U.S. 442, 452–53 (1996)). In *Ostipow*, the Sixth Circuit joined several other circuits in concluding "that the use of police power to lawfully seize and retain property categorically bars a Takings Clause claim." *Id*. (collecting cases).

Plaintiffs do not address defendants' argument regarding their Fifth Amendment claims in their response to the motion for summary judgment. *See* ECF No. 49. The "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to

address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Thus, defendants are entitled to summary judgment on plaintiffs' Fifth Amendment claim.

### D. State Law Claims

Title 28 U.S.C. § 1367 authorizes federal courts to exercise supplemental jurisdiction. A court has the discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Because the Court is dismissing all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the state law claims. These claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons discussed, defendants' motion for summary judgment (ECF No. 46) is **GRANTED**. The complaint's (ECF No. 9) federal claims against defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: March 22, 2023